OPINION
CLIFTON, Circuit Judge:
This appeal presents the question of whether California Penal Code § 403, which makes it a misdemeanor to “willfully disturb[ ] or break[ ] up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in ... Section 18340 of the Elections Code,” is constitutional. Plaintiffs challenge that statute both facially and as applied to them. We hold that § 403 is not unconstitutional on its face and affirm, in part, the decision of the district court to that effect. Because § 403 does not properly apply to Plaintiffs’ activity, however, we reverse the district court’s summary judgment dismissing the action and remand for further proceedings.
I. Background
Plaintiffs are an organization, CPR for Skid Row, and two of its members, Hamid Khan and Pete White (collectively “CPR” or “Plaintiffs”). CPR was founded in 2011 to advocate for the rights of people who reside in the area of downtown Los Ange-les known as Skid Row. White is also a founder and co-director of the Los Angeles Community Action Network.
CPR and its members oppose walks through the Skid Row neighborhood sponsored by the Central City East Association (“CCEA”). CCEA is a non-profit corporation that administers two Business Improvement Districts in downtown Los An-geles and “servefs] as the principal voice of industrial downtown.” In conjunction with the Midnight Mission and Los Angeles City Councilperson Jan Perry, the CCEA in 2005 began organizing community neighborhood walks through Skid Row (the “Walks”). According to the CCEA, the Walks are attended by public officials, law enforcement, members of the judiciary, students, academics, local business owners, social service providers, and the media. The Walks take place on the public sidewalks of the Skid Row neighborhood and, according to the CCEA, allow participants “to see for themselves and learn about the challenges, not through a windshield, but from the experience of walking through [Skid Row] and interact *1101 ing with social service representatives, police, residents and business owners.”
Members of CPR, in contrast, believe that the Walks “support[ ] and promote[ ] the criminalization of homelessness and poverty and [are] comprised only of those from outside of [the Skid Row] community.” According to CPR, the Walks are “dominated by police officers and representatives of the business community,” which are “exactly the same institutions that are promoting the unprecedented levels of police presence, citations and arrests in Skid Row that have made many homeless and poor residents less safe and/or less stable.” The Walks “do not represent the interests of the low-income community, nor [CPR’s] vision for public safety.”
CPR members believe that “the public officials who participate [in the Walks] are demeaning and depersonalizing homeless individuals in order to gain support for repressive measures against the low-income residents of Skid Row who need critical assistance.”
CPR thus began staging protests of the Walks. In preparation for the July 6, 2011, Walk, Lieutenant Shannon Paulson, the Los Angeles Police Department officer in charge of the Central Area Safer Cities Initiative Task Force in Skid Row, held a meeting with her officers and distributed photographs of particular individuals who had engaged in what she had deemed to be “aggressive” behavior at previous Walks in violation of California Penal Code § 403. White’s photograph was not among those distributed.
At the July 6, 2011, Walk, CPR protestors shouted chants, including: ‘We are not resisting. This is our First Amendment Right.” They also banged on drums, often in close proximity to the Walk participants. Lieutenant Paulson and Captain Todd Chamberlain spoke with legal observers from the National Lawyers Guild, informing them that the protestors could demonstrate but that “if it gets to the point when it is disturbing a lawful public meeting, just like we wouldn’t let anyone do it to you, we can’t let anyone do it to them.” They warned the protestors that they could be arrested under § 408. Eventually, White, who was filming the Walk and the protest, was arrested by the LAPD for violating California Penal Code § 403, after he allegedly yelled loudly less than a foot away from one of the Walk attendees. He was booked and released on bail but was not charged with any violation of the law.
CPR filed a lawsuit against the City of Los Angeles asserting that California Penal Code § 403 is unconstitutional, both on its face and as applied, under the First and Fourteenth Amendments of the Constitution and analogous provisions of the California Constitution.[1] The parties filed cross-motions for summary judgment. The district court granted the City’s motion, holding that § 403 is constitutional both on its face and as applied, and denied CPR’s motions for summary judgment, a preliminary injunction, and declaratory relief. Plaintiffs appeal.
II. Void for Vagueness Challenge
California Penal Code § 403 states, in its entirety:
Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor.
The first exception identified in § 403 is § 302 of the Penal Code. It concerns meet *1102 ings “for religious worship” and states, in relevant part:
Every person who intentionally disturbs or disquiets any assemblage of people met for religious worship at a tax-exempt place of worship, by profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where the meeting is held, or so near'it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor....
The second exception listed in § 403, and the one particularly relevant to this case, is § 18340 of the Elections Code. It states, in its entirety:
Every person who, by threats, intimi-dations, or unlawful violence, willfully hinders or prevents electors from assembling in public meetings for the consideration of public questions is guilty of a misdemeanor.
The Elections Code defines “elector” as
any person who is a United States citizen 18 years of age or older and ... is a resident of an election precinct at least 15 days prior to an election!, or is not a resident but either]
(1) He or she was a resident of this state when he or she was last living within the territorial, limits of the United States or the District of Columbia!, or],
(2)He or she was born outside of the United States or the District of Columbia, his or her parent or legal guardian was a resident of this state when the parent or legal guardian was last living within the territorial limits of the United States or the District of Columbia, and he or she has not previously registered to vote in any other state.
Cal. Elec.Code § 321.

A. CPR’s Challenge

CPR contends that § 403 is void for vagueness because it is not clear what conduct is subject to the criminal penalties of § 403 and what conduct is covered by § 18340 and thus excluded from the reach of § 403. Section 18340 refers to “public meetings for the consideration of public questions,” a category of meetings that, argues CPR, appears from the face of the statute to encompass the type of meeting at issue in this case. Electors, similarly, by the statutory definition, include anyone over 18 who resides in any election precinct. That is a vast group of potential participants that, again, encompasses the participants in the meeting at issue here.
This is significant, argues CPR, because § 18340 sets forth a standard for a misdemeanor that is different from, and higher than, the standard for a misdemeanor under § 403. While a person is subject to criminal penalties under § 403 if he “willfully disturbs or breaks up” a meeting, under § 18340 he is subject to penalties only if he uses “threats, intimidations, or unlawful violence”—more egregious conduct—to hinder or prevent the meeting in question from assembling. Thus, knowing what type of meeting is covered by § 18340, and therefore excluded from coverage under § 403, is critical to understanding what type of conduct exposes a person to criminal penalties under § 403.
A penal statute must “define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). An insufficiently definite statute is void for vagueness. Id. “[Standards of permissible statutory vagueness are strict in the area of free expression.” NAACP v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). “Laws that are insufficiently clear are void for three reasons: (1) To avoid *1103 punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on arbitrary or discriminatory interpretations by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms.” United States v. Wunsch, 84 F.3d 1110, 1119 (9th Cir.1996).
“[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.” Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (internal quotation marks, footnote, and alterations omitted). That § 403 “abuts upon sensitive areas of basic First Amendment freedoms” is evident in the facts of this case and in every available case involving the statute, all of which involve not merely speech or expressive conduct but core political speech. See, e.g., In re Kay, 1 Cal.3d 930, 936, 83 Cal.Rptr. 686, 464 P.2d 142 (1970) (rhythmic clapping during a congressman’s speech); McMahon v. Albany Unified Sch. Dist., 104 Cal.App.4th 1275, 1280-81, 129 Cal.Rptr .2d 184 (Cal.Ct.App.2002) (dumping gallons of garbage on the floor during a school board meeting as part of a speech about the problem of litter in the area of the high school); Saraceni v. City of Roseville, No. C041085, 2003 WL 21363458, at *2 (Cal.Ct.App. June 13, 2003) (attempting to address the city council and city attorney at a city council meeting after the public comment period had ended); Norse v. City of Santa Cruz, 629 F.3d 966, 970 (9th Cir.2010) (en banc) (giving a silent Nazi salute and whispering to another meeting attendee in city council meetings); Sanchez v. City of Los Angeles, No. CV 07-5132 GHK (JC), 2011 WL 6951822, at *2 (C.D.Cal. Oct. 31, 2011) (attending a city council meeting with a pillow case, attached to a shirt, that read “CRA Destroys Communities”).
“[A] plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance is unconstitutionally vague or impermissibly restricts a protected activity.” Santa Monica Food Not Bombs v. City of Santa Monica, 450 F.3d 1022, 1033 (9th Cir.2006) (citations, alterations, and internal quotation marks omitted). Where, as here, plaintiffs make a facial constitutional challenge to a state law, “a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.” Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
The California Supreme Court has interpreted § 403 only once. In re Kay, 1 Cal.3d 930, 936-37, 83 Cal.Rptr. 686, 464 P.2d 142 (1970), concerned the arrest and conviction of four people for engaging in “rhythmical clapping” and “some shouting for about five or ten minutes” during the speech of a congressman in a public park at an Independence Day celebration. The California Supreme Court noted that § 403 could be read to cover speech protected by the First Amendment. Applying the common presumption that the legislature intended to enact a valid statute, however, it interpreted the statute more narrowly to render it constitutional. It held that § 403 requires “that the defendant substantially impair[] the conduct of the meeting by intentionally committing acts in violation of implicit customs or usages or of explicit rules for governance of the meeting, of which he knew, or as a reasonable man should have known.” Id. at 943, 83 Cal. Rptr. 686, 464 P.2d 142. The court specified that criminal sanctions could be imposed “only when the defendant’s activity itself—and not the content of the activity’s *1104 expression—substantially impairs the effective conduct of a meeting.” Id. -at 942, 83 Cal.Rptr. 686, 464 P.2d 142.
In so construing § 403, the California Supreme Court did not consider the statute’s exceptions for political meetings and religious meetings. In fact, the court omitted all reference to the exceptions when citing the statute and in its discussion of the statute’s origins.[2] Nonetheless, the court set aside the criminal conviction at issue, concluding that the defendants’ rhythmical clapping did not rise to the level of a misdemeanor under § 403.

B. Interpretation of Section 403

Because no state or federal court has expressly construed § 403 in relation to § 18340, we interpret those statutes by applying California’s rules of statutory construction. In re First T.D. & Inv., Inc., 253 F.3d 520, 527 (9th Cir.2001). Under California law, the “fundamental task” of statutory interpretation is “to determine the Legislature’s intent so as to effectuate the law’s purpose.” People v. Cornett, 53 Cal.4th 1261, 1265, 139 Cal.Rptr.3d 837, 274 P.3d 456 (2012) (internal citations and quotation marks omitted). Where the plain language of a statute is ambiguous or uncertain, we may consider “the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.” Id. (internal citations and quotation marks omitted); see People v. Van Alstyne, 46 Cal.App.3d 900, 911-14, 121 Cal.Rptr. 363 (Cal.Ct.App.1975) (consulting the legislative history after finding that the statutory definition of marijuana as Cannabis sativa L. was ambiguous despite its specificity).
By its express terms, § 403 does not apply to activity in connection with “an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code.” It is the latter exception for meetings covered by § 18340, namely “public meetings for the consideration of public questions,” that is at issue in this case. CPR argues that there is uncertainty as to the type of meetings excluded from § 403 because they are covered by § 18340.
We turn to the legislative history for guidance as to the legislature’s intent in excluding meetings covered by § 18340 from coverage by § 403. See People v. Yoshimura, 62 Cal.App.3d 410, 415-16, 133 Cal.Rptr. 228 (Cal.Ct.App.1976) (where a defendant asserted that the terms “substance” and “material” in a criminal statute were unconstitutionally vague, the court considered the legislative history of the criminal statute, determined the statute’s legislative purpose, and found the terms not to be vague). The legislative history, although complex, shows that § -403 and the other two statutes it identifies as exceptions were intended to apply to three different types of meetings: religious meetings, political meetings, and all other meetings.
Originally enacted in 1872 as part of the first California Penal Code, § 403 had the headnote “Disturbance of public meetings, other than religious or political”[3] and provided, in terms very similar to today’s statute:
*1105 Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, other than such as is mentioned in Sections 59 and 302, is guilty of a misdemeanor.
CaLPenal Code § 403 (Haymond & Burch 1874).[4] The Code Commentator’s note to the 1872 Code explained the coverage of the three sections as follows:
The assembly specified in Sec. 59 is a meeting of electors, held for the discussion of public questions, and that in Sec. 302 a religious meeting. This section includes funerals, and like lawful meetings, and corresponds with the N.Y. Penal Code, Sec. 473.
CaLPenal Code § 403 (Haymond & Burch 1874).[5] Cf. People v. Stuart, 47 Cal.2d 167, 175, 302 P.2d 5 (1956) (using the Code Commissioner’s note from 1872 as an indication of prior legislative intent).
In 1872, § 302, the religious-meetings exception to § 403, was very similar to today’s version of that section,[6] but the political-meetings exception, § 59, was notably different from today’s § 18340. Section 59, under the headnote “Disturbance of public meetings, misdemeanor,” stated, using a structure and a standard very similar to § 403:
Every person who willfully disturbs or breaks up any public meeting of electors or others, lawfully being held for the purpose of considering public questions, is guilty of a misdemeanor.
CaLPenal Code § 59 (1874). This section is not the historical predecessor of the current political meetings exception, Elections Code § 18340, however. Section 18340 derived from a different section of the original 1872 Penal Code, specifically § 58. That section was not, in 1872, ex *1106 empted from coverage under § 403. Section 58 had the heading “Preventing public meetings” and stated:
Every person who, by threats, intimi-dations, or unlawful violence, willfully hinders or prevents electors from assembling in public meeting for the consideration of public questions, is guilty of a misdemeanor.
CaLPenal Code § 58 (1874). This is identical to the language in current Elections Code § 18340, exempted from § 403.
In short, §§ 58 and 59 both applied to “public meetings for the consideration of public questions,” but the two sections had different standards for a misdemeanor. Under § 58, it was a misdemeanor to hinder such a meeting “by threats, intimi-dations, or unlawful violence,” while under it was a misdemeanor simply to “willfully disturb[ ] or break[ ] up” such a meeting. Only § 59 was referred to and excluded from the coverage of § 403; § 58 was not mentioned in § 403 at all.
How did it happen that the original 1872 version of § 403 referred to the now-extinct CaLPenal Code § 59 (“Disturbance of public meetings”) but the current version of § 403 refers to a section identical to the 1872 version of § 58 (“Preventing public meetings”)? The first step in this shift occurred in 1905 when § 59 of the Penal Code was amended and its text wholly replaced with § 41 of the Purity in Elections Act,[7] which had been passed in 1893. The amended § 59 had the headnote “Force, violence or restraint used to influence votes” in place of the original headnote “Disturbance of public meetings, misdemeanor,” and. it contained lengthy prohibitions on voting intimidation and interference. CaLPenal Code § 59 (1905).[8] *1107 Although § .59 no longer had anything to do with public meetings, § 403’s exclusion of § 59 was not modified to reflect the change in the function of § 59. The amendment of § 59 thus rendered § 403’s exclusion of meetings covered by § 59 nonsensical, as § 59 was concerned not with meetings at all but with voting interference. This problem was likely due to an error by the legislature in failing to consider the effect of the amendment of § 59 on § 403 and failing to amend § 403 accordingly. The error was noticed by Deering editors as early as 1915, but the legislature did not take any steps to amend § 403 at that time.[9]
In 1939, Penal Code §§ 58 and 59, among others, were repealed as part of the adoption of California’s first Elections Code. Section 58 (“Preventing public meetings”) became Elections Code § 5004, and § 59 (“Force, violence, or restraint used to influence vote”) was split among Elections Code §§ 11581, 11582, 11584-86. See Cal. Elec.Code §§ 11581-82, 11584-86 (Deering Supp. 1939).
Finally, in 1949, the California Special Crime Study Commission on Criminal Law and Procedure reported that “[a] study of the code indicates that the reference to Section 59 of the Penal Code contained in Section 403 should have been to Section 58 which is now Section 5004 of the Elections Code,” and recommended amending § 403. Special Crime Study Commission, Final Report on Criminal Law and Procedure, Recommendation 13, at 23-24 (1949). In accordance with this recommendation, § 403 was amended, and its reference to Penal Code § 59 was replaced with a reference to Elections Code § 5004, the successor to Penal Code § 58 and predecessor to § 18340. 1949 Cal. Stat. 2119; Cal.Penal Code § 403 (1955). Since 1949, § 403 has not been amended substantively.[10]
Thus, § 18340, which is currently exempted from coverage by § 403, is the successor section to § 58, which was not the original exemption. The substance of § 59, the original exemption from § 403, no longer exists in any form in the California Codes.
In the face of this tortuous history of § 403 and its exceptions, one thing remains clear. The original version of § 403 was enacted with the intent to exempt political meetings from coverage by § 403. This intent was reaffirmed in 1949, when the legislature, after careful consideration, chose to exclude from § 403’s coverage a statutory section as close as possible to the original exception, with the result that the revised version of § 403 excluded the same meetings as had the original version of the statute: political and religious meetings. As to political meetings, however, unlike general meetings and religious meetings, *1108 the legislature established a higher threshold for unlawful conduct than the original exception had done. The amended political-meetings statute made it a misdemean- or to hinder or prevent such meetings by “threats, intimidations, or unlawful violence,” but not to “disturb or break up” such meetings by non-violent means.

C. Application of § 4,03 to CPR’s Activities

The plain language of the statute and its legislative history demonstrate that § 408 does not cover political meetings, including the meeting at issue here. It is a misdemeanor to disrupt such meetings only under § 18340 and only if the disruption consists of “threats, intimidations, or unlawful violence.”
The “meeting” at issue here involved the consideration of public questions, namely the conditions on Skid Row, and involved people within the broad definition of “electors.” Those invited to participate in the Walk were people whom the CCEA refers to as “stakeholders” in downtown business. As discussed below at 29, this conclusion leads us to reverse the judgment of the district court in part and remand for further proceedings.

D. The Voidr-for-Vagueness Challenge Falls Short

Based on this understanding of the statute, though, we affirm the portion of the district court’s judgment that rejected CPR’s facial challenge to § 403 as unconstitutionally vague. A facial challenge is “the most difficult challenge to mount successfully.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
As expressed in his concurring opinion, Judge Reinhardt takes the position that the construction given to § 403 by the California Supreme Court in Kay, 1 Cal.3d 930, 83 Cal.Rptr. 686, 464 P.2d 142, renders the statute unconstitutionally vague because the court disregarded the exception for assemblies covered by Elections Code § 18340. In support of his position, he cites to subsequent decisions by the California Courts of Appeal and federal courts that also disregarded the exception. In Judge Reinhardt’s view, the disparity between the plain language of the statutory exception and the interpretation in Kay that appears to eliminate the exception in a factual context where it should apply is too great for citizens to understand what § 403 actually covers. We think that conclusion assumes too much.
We agree that the text and legislative history of § 403 demonstrate that it does not apply to assemblies of electors of the type covered in § 18340. We also agree that the kind of meetings discussed in Kay would appear to qualify as a public meeting of electors under the Elections Code. But we cannot assume that the California Supreme Court intended by its decision in Kay to read the statutory exceptions to § 403 out of the statute.
There is no indication in Kay that either party raised the question of the applicability of § 403 to political meetings. California appellate courts are not required to consider or discuss arguments that were not developed in the briefs. People v. Stanley, 10 Cal.4th 764, 793, 42 CaLRptr .2d 543, 897 P.2d 481 (1995) (noting that if a brief does not contain a legal argument with citation of authorities on the points made, the “ ‘court may treat it as waived, and pass it without consideration’ ” (quoting 9 Witkin, Cal. Procedure, Appeal § 479 (3d ed.1985))); Mansell v. Bd. of Admin., 30 Cal.App.4th 539, 546, 35 Cal.Rptr .2d 574 (Cal.Ct.App.1994) (“[I]t is not [the appellate] court’s function to serve as ... backup appellate counsel.”). If neither party argued the exception applied, the California Supreme Court would not *1109 be required to address the exception in its opinion, even in a case in which the facts would support its application.
Moreover, the Kay court concluded that the conduct of the defendants did not substantially impair or disturb the public meeting. Kay concerned an Independence Day celebration in a public park with a speech by a congressman who was also a candidate for reelection. 1 Cal.3d at 935-36, 83 Cal.Rptr. 686, 464 P.2d 142. The speech was interrupted by “rhythmical clapping” by protestors who supported a consumer boycott of non-union table grapes, which the congressman had declined to support. Id. The California Supreme Court applied § 403 and held that the conduct did not rise to the level required for a misdemeanor. An argument based on the statutory exception would have led to exactly the same result. Courts need not deal with all alternative routes to the same outcome. Any inference based on the failure of the decision to discuss an alternative route rests on an unpersuasive foundation.
The California Courts of Appeal following Kay have not addressed the interaction between § 403 and § 18340. See McMahon, 104 Cal.App.4th at 1286-87, 129 Cal.Rptr.2d 184; Saraceni, No. C041085, 2003 WL 21363458. Indeed, in no case—state or federal, published or unpublished—in which a court has addressed § 403 did any court construe Penal Code § 403 in relation to Elections Code § 18340. See id.; Norse, 629 F.3d at 970, 978; Sanchez, 2011 WL 6951822, at *13. As in Kay, there is no indication in any of these cases that the exception to § 403 was raised.[11]
Premising a conclusion that § 403 is unconstitutionally void for vagueness based on an interpretation of that statute that has never actually been expressed by the California Supreme Court or by any court is a leap that we are not prepared to take. We will not attribute that interpretation to the California Supreme Court based on its silence in Kay. We affirm the portion of the district court’s decision that concluded that § 403 is not void for vagueness.
III. Other Facial Challenges
CPR also argues that § 403 is an unconstitutional restriction on speech because it is content based, is not narrowly tailored, and does not leave open ample alternative means of communication. The government “may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without references to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.” Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 945 (9th Cir.2011) (en banc) (internal quotation marks and citations omitted).
We “consider a rule content-based when it establishes a general ban on speech, but maintains exceptions for speech on certain subjects.” Glendale Assocs., Ltd. v. N.L.R.B., 347 F.3d 1145, 1155 (9th Cir.2003). CPR argues that § 403 is a content-based restriction on speech because, by its terms, it does not apply to meetings covered by the two exceptions *1110 identified above, for religious worship or for public meetings of electors to consider public questions.
The exceptions here, however, distinguish certain types of meetings, not speech on certain subjects at those meetings. Neither Penal Code § 302 nor Elections Code § 18340 pertains to speech itself. They pertain to the contexts in which speech is regulated. The statute is silent with respect to what subject matter of speech may or may not be spoken at such meetings. Indeed, the exemptions from § 403 for religious or electoral meetings are more accurately differences in the standard for disruptive speech rather than actual exceptions. For the same reasons, § 403 also does not prohibit or protect specific messages, as did the flag-burning statute at issue in United States v. Eichman, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990).
A statute may also be content based if it “would allow or disallow speech depending on the reaction of the audience.” Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep’t, 533 F.3d 780, 787 (9th Cir.2008). “[Listeners’ reaction to speech is not a content-neutral basis for regulation.” Id. at 788 (quoting Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 134, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992)).
Section 403 does not regulate speech based on audience reaction. The California Supreme Court explained that whether a disturbance triggers a § 403 violation depends on “the actual impact of that misconduct on the course of the meeting; the question cannot be resolved merely by asking persons present at the meeting whether they were ‘disturbed.’ ” Kay, 1 Cal.3d at 944, 83 Cal.Rptr. 686, 464 P.2d 142. We agree with the district court that § 403 does not regulate the content of speech.
A content-neutral time, place, or manner restriction on speech is narrowly tailored if it “does not burden substantially more speech than is necessary to achieve a substantial government interest.... [T]he existence of obvious, less burdensome alternatives is a relevant consideration in determining whether the ‘fit’ between ends and means is reasonable.” Berger v. City of Seattle, 569 F.3d 1029, 1041 (9th Cir. 2009) (internal citations, quotation marks, and modifications omitted). CPR argues that § 403 is not narrowly tailored because it applies to expressive conduct, no matter how momentary, and sweeps within its breadth large amounts of protected speech.
The government interest at stake in this statute is “ensuring that some individuals’ unruly assertion of their rights of free expression does not imperil other citizens’ rights of free association and discussion.” Kay, 1 Cal.3d at 941, 83 Cal.Rptr. 686, 464 P.2d 142. In short, the statute aims to prevent meetings from being disrupted. A protestor’s conduct only violates the statute when it “substantially impair[s] the conduct of the meeting.” Id. at 943, 83 Cal.Rptr. 686, 464 P.2d 142. Further, as Kay emphasized, “the nature of a meeting necessarily plays a major role” in determining whether protestor conduct has substantially impaired the meeting. Id. “The customs and usages at political conventions may countenance prolonged, raucous, boisterous demonstrations as an accepted element of the meeting process; similar behavior would violate the customs and usages of a church service.” Id. This contextual inquiry into the “customs and usages” of the meeting along with the substantial-impairment standard narrowly tailor the statute to the government’s substantial interest. Contrary to CPR’s concerns, neither a momentary disruption nor *1111 large amounts of protected speech would fall within the statute’s reach.
A time, place, or manner restriction on speech must leave open ample alternatives for communication. Section 403 does. To violate the statute, a protestor must substantially impair or break up a public meeting. The statute does not prevent all protests or means of protest. It requires only that a protest not be so disruptive as to break up or substantially impair the meeting. There is nothing that prevents CPR from communicating its message in non-disruptive ways, and CPR does not allege that it has been precluded from doing so. By allowing protest that does not substantially impair public meetings, § 403 leaves open alternative communication channels.
We therefore agree with the district court that § 403 is not unconstitutional on its face.
IV. As-Applied Challenge
Although § 403 is constitutional on its face, it does not properly apply to CPR’s protests. As discussed above at 1107-08, Elections Code § 18340 governs “electors ... assembling in public meetings for the consideration of public questions.” Cal. Elec.Code § 18340. CPR’s activities fall within this exception to § 403 because the Walks they have protested consist of public officials and members of the public who meet on public sidewalks to learn about the challenges in the Skid Row neighborhood. By its terms, § 403 does not cover meetings that are covered by § 18340, so § 403 does not apply to CPR’s activities.
In rejecting CPR’s as-applied challenge, the district court did not discuss that question. Rather, it focused on whether White was arrested based on the content of his speech. It concluded that “there can be no serious dispute that Mr. White was arrested because his conduct substantially impaired the conduct of the Skid Row Walk and was not based upon, in any manner whatsoever, the content of his chant.” That was true, but it does not speak to the threshold question of whether § 403 applied to that activity in the first place. Because we conclude that it did not, we reverse that part of the district court’s decision and remand for further proceedings, including the consideration of what relief is appropriate.
V. Conclusion
We hold that California Penal Code § 403 was unconstitutionally applied to CPR’s activities. Because CPR’s activities fall within the exception carved out by Elections Code § 18340, § 403 does not criminalize CPR’s conduct. Therefore, the district court’s order granting summary judgment in favor of defendants and denying summary judgment' to plaintiffs is reversed. We remand for further proceedings, including the determination of what relief, if any, may be appropriate.
Each party to bear its own costs.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. CPR notified the California Attorney General that it was challenging the constitutionality of § 403, but the Attorney General did not intervene to defend it.

. The court quoted an expurgated version of § 403: "Section 403 of the Penal Code provides: 'Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, ... is guilty of a misdemeanor.’ ” Kay, 1 Cal.3d at 937-38, 83 Cal.Rptr. 686, 464 P.2d 142 (alteration in original).

. See Farraher v. Superior Court of Kern County, Dept. 3, 45 Cal.App. 4, 5-6, 187 P. 72 (Cal.Ct.App.1919) (the heading of the 1872 version of § 403 "must be deemed a part of the substance of the enactment and accorded the same effect as though written into the body of the law” and, therefore, a meeting must be public to fall within this section).

. Compare to the current version of § 403 (differences indicated in bold):
Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting that is not unlawful in its character, other than an assembly or meeting referred to in Section 302 of the Penal Code or Section 18340 of the Elections Code, is guilty of a misdemeanor.

. Section 473 stated:
Every person who, without authority of law, willfully disturbs or breaks up any assembly or meeting, not unlawful in its character, other than such as are mentioned in sections 55, 79, and 359, of this Code, is guilty of a misdemeanor.
Draft of a Penal Code for the State of New York ("Fields Draft”) § 473 (1864). The annotation to the Fields Draft explains that "The assemblies specified in the sections referred to are religious meetings, meetings of electors held for discussion of public questions, and funerals.” Id. The California version of the statute does not have a separate statutory section covering funerals and instead incorporates funerals into § 403.

. The 1872 version of § 302 provided:
Every person who willfully disturbs or disquiets any assemblage of people met for religious worship by noise, profane discourse, rude, or indecent behavior, or by any unnecessary noise, either within the place where such meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor.
Cal.Penal Code § 302 (Haymond & Burch 1874). Compare to the current version of § 302 (deletions indicated by strike-through; additions indicated by bold):
(a) Every person who intentionally disturbs or disquiets any assemblage of people met for religious worship at a tax-exempt place of worship, by [noise,] profane discourse, rude or indecent behavior, or by any unnecessary noise, either within the place where the meeting is held, or so near it as to disturb the order and solemnity of the meeting, is guilty of a misdemeanor punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail for a period not exceeding one year, or by both that fine and imprisonment.
The current statute also contains sections (b)—(f), which provide additional details on penalties for violation of § 302.

. The full title was "An Act to promote the purity of elections by regulating the conduct thereof, and to support the privilege of free suffrage by prohibiting certain acts and practices in relation thereto, and providing for the punishment thereof.” 1893 Cal. Stat. 12.

. The amended § 59 stated, in full:
It is unlawful for any person, directly or indirectly, by himself or any other person in his behalf, to make use of, or threaten to make use of, any force, violence, or restraint, or to inflict or threaten the infliction, by himself or through any other person, of any injury, damage, harm, or loss, or in any manner to practice intimidation upon or against any person, in order to induce or compel such person to vote or refrain from voting at any election, or to vote or refrain from voting for any particular person or persons at any election, or on account of such person or persons at any election, or on account of such person having voted or refrained from voting at any election. And it is unlawful for any person, by abduction, duress, or any forcible or fraudulent device or contrivance whatever, to impede, prevent, or otherwise interfere with the free exercise of the elective franchise by any voter; or to compel, induce, or prevail upon any voter either to give or refrain from giving his vote at any election, or to give or refrain from giving his vote for any particular person or persons at any election. It is not lawful for any employer, in paying his employees the salary or wages due them, to inclose their pay in "pay envelopes” upon which there is written or printed the name of any candidate, or any political mottoes, devices, or arguments containing threats, express or implied, intended or calculated to influence the political opinions or actions of such employees. Nor is it lawful for any employer, within ninety days of any election, to put up or otherwise exhibit in his factory, workshop, or other establishment or place where his workmen or employees may be working, any hand-bill or placard containing any threat, notice, or information, that in case any particular ticket of a political party, or organization, or candidate shall be elected, work in his place or .establishment will lease, in whole or in part, or his place or establishment be closed up, or the salaries or wages of his workmen or employees be reduced, or other threats, express or implied, intended or calculated to influence the political opinions or actions of his workmen or employees. This section applies to corporations as well as individuals, *1107 and any person or corporation violating the provisions of this section is guilty of a misdemeanor, and any corporation violating this section shall forfeit its charter.
Cal.Penal Code § 59 (1905).

. In the 1915 edition of the California Penal Code, although the statutory text of § 403 still referred to § 59, the Deering’s annotations now pointed to a Penal Code § 58, which had not previously been associated with § 403 in any way. Similarly, the Deering's annotations pertaining to § 58, and not to § 59, referred to § 403. Cal.Penal Code §§ 403, 58, 59 (Deering 1915).

. A mysterious legislative comment appeared in 1976, stating that the Elections Code section (then § 12046, now § 18340) "is needed to prevent conduct which would prevent a meeting from taking place at all, including verbal threats, etc. since Penal Code 403 does not deal with verbal behavior.” Cal. Elec.Code § 29440 (Deering 1977): This comment contradicts all other indications of the legislative purpose of the exceptions to § 403 and also contradicts the Kay court's 1970 interpretation of § 403 as very much covering "verbal behavior,” as is clear in its extended First Amendment analysis. We therefore give this comment little weight.

. As it happens, the one Ninth Circuit decision cited in the concurring opinion, at 1117, to illustrate the application of Penal Code § 403 to a political meeting and judicial disregard of the statutory exception for activity covered by Elections Code § 18340 is an opinion that both Judge Reinhardt and Judge Clifton joined, as members of an 11-judge en banc panel. Norse v. City of Santa Cruz, 629 F.3d 966, 978 (9th Cir.2010) (en banc). It is safe to infer that neither of us, or any other member of the panel, intended to cut the exception out of the statute. The subject was not raised at the time.