**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXIA HERRERA,<br>*Plaintiff-Appellee*, | No. 18-15135 |
| v. | D.C. No.<br>2:16-cv-01802-SB |
| ZUMIEZ, INC.,<br>*Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Stanley Allen Bastian, District Judge, Presiding

Argued and Submitted February 4, 2019
San Francisco, California

Filed March 19, 2020

Before: Richard A. Paez, Marsha S. Berzon, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Paez;
Concurrence by Judge Berzon;
Concurrence by Judge R. Nelson

# SUMMARY[*]

### California Employment Law

The panel affirmed in part, and reversed in part, the district court's decision in a putative class action alleging that Zumiez, Inc. failed to pay employees at its California retail stores reporting time pay for "Call-In" shifts.

While this appeal was pending, the California Court of Appeal decided *Ward v. Tilly's, Inc.*, 243 Cal. Rptr. 3d 461 (Ct. App. 2019), *review denied* (May 15, 2019), which held that reporting time pay must be paid in a closely analogous situation, an outcome consistent with the district court's denial of Zumiez's motion for judgment on the pleadings here.

The panel followed *Ward*'s controlling interpretation of state law, and affirmed the district court with respect to the reporting time pay claim. Following *Ward*, the panel concluded that, under subsection (5)(A) of California's Wage Order 7, a requirement that employees call their manager thirty minutes to one hour before a scheduled shift constitutes "reporting for work." The panel held that the district court correctly determined that the plaintiff stated a claim for reporting time pay when she alleged that she was scheduled for a shift, expected to work, incurred costs or arranged her other obligations and planned activities to make herself available, and then was not permitted to work.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Plaintiff also asserted an "hours worked" minimum wage claim for unpaid wages for the time that employees spent calling their managers for Call-In shifts. Construing the facts alleged in the complaint as true and in the light most favorable to the non-moving party, the panel held that plaintiff alleged a claim for unpaid wages where plaintiff alleged that she and other employees were required to call their managers thirty minutes to one hour before their Call-In shifts, alleged that these calls were required three to four times per week and lasted five to fifteen minutes, and, critically, alleged that employees could be disciplined for failing to comply with the Call-In shift policy. The panel concluded that the allegations pled were sufficient to defeat Zumiez's motion for judgment on the pleadings.

Plaintiff and putative class members sought indemnification for phone expenses incurred in calling Zumiez before Call-In shifts. The panel held that under California law, to state a claim for reimbursement of phone expenses turns on whether it was necessary that the employees make calls and do so with phones that were not provided by the company. The panel further held that plaintiff failed to include specific, non-conclusory facts about how she made the calls or what costs she incurred. Accordingly, the panel reversed the district court's denial of judgment on the pleadings as to the indemnification claim, and remanded for the district court to allow plaintiff leave to amend the complaint to include more specific allegations.

Because plaintiff's remaining claims were derivative of plaintiff's reporting time pay, minimum wage, and indemnification claims, the panel affirmed the denial of the motion for judgment on the pleadings on the remaining claims, to the extent the district court determined they related to the reporting time pay and minimum wage claims.

Judge Berzon concurred, and wrote separately to respond to Judge R. Nelson's concurrence. She wrote that where, as here, the panel is following the only state appellate opinion on point and there was no reason to think the state Supreme Court, which denied review of that appellate question, would disagree, then certifying the issue was unwise. She concluded that no issue of federalism was at stake here that was not inherent in the existence of diversity jurisdiction.

Judge R. Nelson concurred.  He agreed that the decision to follow the decision in *Ward* accorded with this sound constitutional principle, but he wrote further that by publishing without first seeking the views of the California Supreme Court, the panel risked undermining cooperative judicial federalism.

## COUNSEL

John F. Querio (argued), Felix Shafir, and Scott P. Dixler, Horvitz & Levy LLP, Burbank, California; Nathan W. Austin and Evan D. Beecher, Jackson Lewis P.C., Sacramento, California; for Defendant-Appellant

Cody Kennedy (argued) and Stanley D. Saltzman, Marlin & Saltzman, LLP, Agoura Hills, California, for Plaintiff-Appellee.

Mark D. Kemple and Ryan C. Bykerk, Greenberg Traurig, LLP, Los Angeles, California, for Amicus Curiae Abercrombie & Fitch Stores, Inc.

## OPINION

PAEZ, Circuit Judge:

California law requires employers to provide partial compensation ("reporting time pay") to retail employees who report for work but are not actually provided work. Alexia Herrera ("Herrera") filed this putative class action alleging that Zumiez, Inc. ("Zumiez") failed to pay employees at its California retail stores reporting time pay for "Call-In" shifts. As alleged, an employee scheduled for a Call-In shift must make herself available to work during the shift and then call her manager thirty minutes to one hour before the shift or, if she works a shift immediately before the Call-In shift, contact her manager at the end of that shift. At that time—either during the call or during the post-shift contact—the manager tells the employee whether she will be required to work during the Call-In shift. If the employee does not work, Zumiez does not pay the employee. Herrera also alleged related claims for failure to pay minimum wages and failure to indemnify expenses for phone calls employees needed to make to comply with the Call-In policy.

Zumiez moved for judgment on the pleadings. The district court denied the motion. This interlocutory appeal followed.

While this appeal was pending, the California Court of Appeal decided *Ward v. Tilly's, Inc.*, 243 Cal. Rptr. 3d 461 (Ct. App. 2019), *review denied* (May 15, 2019). *Ward* held that reporting time pay must be paid in a closely analogous situation, an outcome consistent with the district court's denial of Zumiez's motion for judgment on the pleadings here. Because there is no "persuasive data" to convince us that the California Supreme Court would decide otherwise,

we follow *Ward*'s "controlling interpretation of state law" and affirm with respect to the reporting time pay claim. *Tomlin v. Boeing Co.*, 650 F.2d 1065, 1069 n.7 (9th Cir. 1981); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).  With respect to the other claims, we affirm in part and reverse in part.

## I.

Herrera filed a putative class action against Zumiez, a Washington corporation with retail stores in California.  We summarize the relevant facts as alleged in Herrera's First Amended Complaint.

From August 2014 through March 2015, Herrera worked as a Sales Associate at a Zumiez retail store in Chico, California.  Zumiez scheduled Herrera and other employees for work according to two scheduling policies.  First, Zumiez scheduled employees for "Show-Up" shifts, requiring the employees to report for the scheduled work shift by physically showing up at a Zumiez store.

Second, Zumiez scheduled employees for "Call-In" shifts.  If the employee was scheduled for a Show-Up shift immediately before a Call-In shift, the employee had to wait until the end of the Show-Up shift to ask her manager if she would be required to work the scheduled Call-In shift.  If the employee was not scheduled to work a Show-Up shift immediately before a Call-In shift, then the employee was required to make a phone call to her manager between thirty minutes and one hour before the scheduled Call-In shift.  The employee would then wait for the manager to determine whether the employee would be permitted to work during the scheduled shift.  Phone calls for Call-In shifts generally lasted five to fifteen minutes.

Whether she had a shift before the Call-In shift or not, the employee was required to be available to work the Call-In shift. The employee could be subject to discipline for not working Call-In shifts for the same reasons she could be disciplined for not working Show-Up shifts. The employee could not schedule classes or doctor appointments, or work for other employers during the Call-In shift, and she had to make child or elder care arrangements under the assumption she would work. Employees were not paid for Call-In shifts unless they were permitted to work and were not paid for the time they spent on the phone with their managers. Herrera and other employees were scheduled for Call-In shifts three to four times per week; they worked approximately half of these shifts.

Herrera alleged the following causes of action: (1) failure to pay reporting time wages for Call-In shifts; (2) failure to pay minimum wage; (3) failure to keep required records; (4) failure to provide accurate wage statements; (5) failure to pay all earned wages upon separation from employment; (6) failure to indemnify expenses for phone calls made for Call-In shifts; (7 and 8) unfair business practices under California's Unfair Competition Law; and (9) civil penalties pursuant to California's Private Attorneys General Act ("PAGA"). Zumiez moved for judgment on the pleadings on all of Herrera's claims pursuant to Federal Rule of Civil Procedure 12(c).

The district court denied Zumiez's motion as to all claims. First, the district court held that "'report for work' may be accomplished telephonically," so Herrera had stated a reporting time pay claim. The district court did not address liability for reporting time pay where a Call-In shift immediately follows a Show-Up shift. Second, drawing inferences in Herrera's favor, the district court found that the

complaint plausibly alleged that employees were subject to their employer's control during phone calls, so Herrera had stated a minimum wage claim. The district court recognized that factual questions remained to determine whether employees were subject to their employer's control during calls. Third, the district court found that Herrera had alleged that Zumiez had constructive knowledge that employees would use cell phones or otherwise incur expenses when making the calls, so Herrera had stated an indemnification claim.

The parties agreed that the claims for failure to keep required records, failure to provide accurate wage statements, failure to pay all earned wages upon separation from employment, unfair business practices, and civil penalties under PAGA (collectively, the "remaining claims") were derivative of the other claims. Accordingly, the district court denied judgment on the pleadings as to those claims as well.

The district court then granted Zumiez's motion to certify its order denying judgment on the pleadings for interlocutory appeal, 28 U.S.C. § 1292(b), noting that the "not otherwise appealable order . . . 'involves a controlling question of law as to which there is substantial ground for difference of opinion,'" namely "does the wage order require workers to physically come to the workplace in order to report?" Zumiez then filed a petition for permission to appeal, identifying the question sought to be appealed as "[w]hether an employee must physically present himself or herself at the workplace in order to 'report for work' and thereby qualify for reporting time pay under California law." We granted the petition and this appeal ensued.

## II.

We review de novo an order on a Rule 12(c) motion for judgment on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). We accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Id.* As under a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion for judgment on the pleadings is properly granted only when, "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978–79 (9th Cir. 1999) (internal citation omitted).

## III.

We have diversity jurisdiction pursuant to 28 U.S.C. § 1332 and apply California law. *See Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346 & n.2 (9th Cir. 1974). In California, wage and hour claims are governed by two sources of authority: provisions of the Labor Code, enacted by the Legislature, and a series of wage orders, adopted by the Industrial Welfare Commission ("IWC"). *Troester v. Starbucks Corp.*, 421 P.3d 1114, 1119 (Cal. 2018), *as modified on denial of reh'g* (Aug. 29, 2018). The California Division of Labor Standards Enforcement ("DLSE") is the state agency empowered to enforce the wage orders. *Morillion v. Royal Packing Co.*, 995 P.2d 139, 142 (Cal. 2000). The California Supreme Court has said "[t]ime and again" that courts should construe the wage orders "to favor the protection of employees." *Troester*, 421 P.3d at 1119 (quoting *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 827 (Cal. 2016)). Wage Order No. 7-2001 ("Wage Order 7"), which regulates the wages, hours, and working

conditions in the mercantile industry, applies here.**[1]**   Cal. Code Regs. tit. 8, § 11070.

## A. Reporting Time Pay

Herrera alleges that Zumiez failed to comply with the reporting time pay requirements of Wage Order 7 by denying employees compensation for Call-In shifts when employees made themselves available for work during scheduled shifts, called or contacted Zumiez at an appointed time, and were told they would not be permitted to work. Cal. Code Regs. tit. 8, § 11070(5).

Pursuant to section (5) of Wage Order 7, which is entitled "Reporting Time Pay," "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work" in an amount no less than two hours' wages and no more than four hours' wages. *Id*. § 11070(5)(A).   The parties dispute whether calling one's employer at an appointed time before a scheduled shift constitutes "report[ing] for work" under this provision.**[2]**

---

**[1]** Wage Order 7-2001 governs "all persons employed in the mercantile industry," except for employees working in "administrative, executive [managerial], or professional capacities."  Cal. Code Regs. tit. 8, § 11070(1)(A).  Herrera's claims pertain to the pay of non-exempt retail workers.

**[2]** The parties also dispute whether reporting for a scheduled Call-In shift that immediately follows a Show-Up shift constitutes "reporting for work" under subsection (5)(B) of Wage Order 7.  Cal. Code Regs. tit. 8, § 11070(5)(B) (requiring pay "[i]f an employee is required to report for work a second time in any one workday and is furnished less than two

### 1. *Ward v. Tilly's, Inc.*

While this appeal was pending, the California Court of Appeal published *Ward v. Tilly's, Inc.*, 243 Cal. Rptr. 3d 461. *Ward* addressed a question closely similar to one in this case: whether retail store employees were due reporting time pay pursuant to Wage Order 7 when they contacted the store two hours before their Call-In shift (i.e., "on-call" shift) started—as required by their employer—and were told not to come to work. *Ward*, 243 Cal. Rptr. 3d at 463–65. The court "conclude[d] that the on-call scheduling alleged . . . triggers Wage Order 7's reporting time pay requirements," reasoning that such shifts "burden employees, who cannot take other jobs, go to school, or make social plans during on-call shifts—but who nonetheless receive no compensation . . . unless they ultimately are called in to work. This is precisely the kind of abuse that reporting time pay was designed to discourage." *Id*. at 463–64.

The dissent in *Ward* maintained that the drafters' intent behind the wage order was to require a worker to physically appear at the workplace to qualify for reporting time pay. *Id.* at 479–80. Relying on the "plain meaning of the word 'report,'" *Ward*, 243 Cal. Rptr. 3d at 480 (quoting *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKx), 2014 WL 12644922, at *3 (C.D. Cal. Dec. 1, 2014)), the partial dissent reasoned that reporting for work required "physically showing up at the place ready to work," *Ward*, 243 Cal. Rptr. 3d at 480 (quoting *Casas*, 2014 WL

---

(2) hours of work on the second reporting"). Because the district court did not consider this claim, we do not address it here. On remand, the district court may address this claim as appropriate.

12644922, at *3), by definition excluding Call-In shifts from the wage order's reporting time pay requirements.

The California Supreme Court denied a petition for review in *Ward*. We follow *Ward* to resolve the parties' dispute about the meaning of "report for work" under subsection (5)(A) of Wage Order 7. As a federal court, we are not "free to choose [our] own rules of decision whenever the highest court of the state has not spoken." *Am. Tel. & Tel. Co.*, 311 U.S. at 236. Instead, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* at 237; *Torrance Nat. Bank v. Aetna Cas. & Sur. Co.*, 251 F.2d 666, 669 n.6 (9th Cir. 1958) ("This decision on local law by a highly respected intermediate court of appeal must be accorded great weight."). "This is the more so where, as in this case, the highest court has refused to review the lower court's decision." *Am. Tel. & Tel. Co.*, 311 U.S. at 237; *see also Ogden Martin Sys., Inc. v. San Bernardino Cty.*, 932 F.2d 1284, 1289 (9th Cir. 1991) ("We are less strictly compelled to follow intermediate appellate decisions when those decisions have not been appealed to the state's highest court."). Even if it is arguable that the California Supreme Court "will at some later time modify the rule . . . [i]n the meantime the state law applicable to these parties and in this case has been authoritatively declared by the highest state court in which a decision could be had." *Am. Tel. & Tel. Co.*, 311 U.S. at 238.**[3]**

---

**[3]** In *Segal v. Aquent LLC*, a district court held that calling in to work on assigned workdays is reporting for work within the meaning of the

Zumiez argues that we should not follow *Ward* because there is persuasive data that the California Supreme Court would reach a different conclusion. As we shall explain, we are aware of no such persuasive data. Alternatively, Zumiez argues that we should certify the question of interpreting Wage Order 7's reporting time pay provision to the California Supreme Court—even though the California Supreme Court recently denied a petition for review in *Ward*, which presented that very question. *See Am. Tel. & Tel. Co.*, 311 U.S. at 237. Notably, there are no conflicting California Courts of Appeal decisions. *See Contra Pooshs v. Phillip Morris USA, Inc.*, 561 F.3d 964, 968 (9th Cir. 2009) (certifying a question where multiple California Courts of Appeal decisions spanning the course of two decades had produced split decisions); *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982) (certifying a question where three California Courts of Appeal had construed the meaning of the applicable statute in different ways). Because we are the first federal appellate court to address this issue, there is no "sharp split of authority between the California Courts of Appeal and the Ninth Circuit regarding the proper interpretation of" state law. *Emery v. Clark*, 604 F.3d 1102, 1112 (9th Cir. 2010) (certifying a question where

---

statute. No. 18-cv-346-LAB (JLB), 2018 WL 4599754, at *5 (S.D. Cal. Sept. 24, 2018). In contrast, *Casas v. Victoria's Secret Stores, LLC*, held that the reporting-time provisions of the wage order do not provide a remedy for employees who are required to call in to work but then not permitted to work. No. CV-14-6412-GW (VBKx), 2014 WL 12644922, at *6 (C.D. Cal. Dec. 1, 2014). Disagreement among federal district courts does not persuade us that the California Supreme Court would decide the question differently than the California Court of Appeal, especially as it had the chance to do so after the district court decisions. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) (recognizing that we "must adhere to state court decisions—not federal court decisions—as the authoritative interpretation of state law").

"a conflict [had] been recognized by courts on both sides of the precedential divide"). We decline to certify the question because we have no reason to doubt that the California Supreme Court would reach an outcome consistent with *Ward*.

## 2. Principles of Interpretation

California's "wage orders are to be accorded the same dignity as statutes." *Troester*, 421 P.3d at 1119; *see also Watkins v. Ameripride Servs.*, 375 F.3d 821, 825 (9th Cir. 2004) (recognizing that wage orders are "quasi-legislative regulations that are to be interpreted in the same manner as statutes"). Thus, we apply California's "usual rules of statutory interpretation." *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 527 (Cal. 2012); *see also CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1104 (9th Cir. 2015) (recognizing that our court "appl[ies] California's rules of statutory construction" to California law). California case law requires that we give effect to the IWC's purpose of protecting employees:

> When construing the Labor Code and wage orders, we adopt the construction that best gives effect to the purpose of the Legislature and the IWC. Time and again, we have characterized that purpose as the protection of employees—particularly given the extent of legislative concern about working conditions, wages, and hours when the Legislature enacted key portions of the Labor Code. In furtherance of that purpose, we liberally construe the Labor Code and wage orders to favor the protection of employees.

*Troester*, 421 P.3d at 1119 (internal citations and quotations omitted); *see also Martinez v. Combs*, 231 P.3d 259, 276 (Cal. 2010); *Ramirez v. Yosemite Water Co., Inc.*, 978 P.2d 2, 8 (Cal. 1999); *Ward*, 243 Cal. Rptr. 3d at 467 (recognizing and applying the principle of construing wage orders to protect employees).

Statutory interpretation under California law begins with the words themselves, giving them "their plain and commonsense meaning," because the words of a legal text "generally provide the most reliable indicator of [the enacting body's] intent." *Murphy v. Kenneth Cole Prods., Inc.*, 155 P.3d 284, 289 (Cal. 2007). If the "language is clear and unambiguous our inquiry ends." *Id*. "[W]hen the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Nolan v. City of Anaheim*, 92 P.3d 350, 352 (Cal. 2004).

Furthermore, *Ward* recognized that earlier-enacted California statutes can be applied to later adopted technologies without compromising principles of legislative intent. 243 Cal. Rptr. 3d at 469–71. "[I]n construing statutes that predate their possible applicability to new practices or technology, 'courts have not relied on wooden construction of their terms.'" *Id.* at 469 (quoting *Apple Inc. v. Superior Court*, 292 P.3d 883, 887 (Cal. 2013)). In one such instance, for example, the California Supreme Court concluded that although the Song-Beverly Credit Card Act was "enacted in 1990, almost a decade before online commercial transactions became widespread," that fact did not preclude the statute's application to such transactions. *Id.* at 887–87. Similarly,

the California Court of Appeal has interpreted the phrase "members' names [and] addresses" in a provision of the Corporations Code enacted in 1978 to include "e-mail addresses," even though e-mail had not become a form of widespread and instantaneous communication at that time, because "the legislative purpose of the statute indicate[d] the Legislature would have intended the inclusion of e-mail addresses in the original statute had it anticipated the existence of such." *WorldMark, The Club v. Wyndham Resort Dev. Corp.*, 114 Cal. Rptr. 3d 546, 556–58 (Ct. App. 2010); *see also O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 104–05 (Ct. App. 2006) (holding that an online news magazine constitutes a "periodical publication" under a law that was enacted before digital magazines).

*Ward* recognized and applied these principles of interpretation under California law. 243 Cal. Rptr. 3d at 467–75. We do so as well.

### 3. "Report for Work"

The parties dispute, in this interlocutory appeal, whether "report for work" under subsection (5)(A) of Wage Order 7 includes calling one's manager thirty minutes to one hour before a scheduled shift, as Herrera argues it does. Zumiez argues that one can only "report for work" in person and therefore only an employee's physical presence may trigger the reporting time pay requirement. The California Court of Appeal resolved this dispute in *Ward*.

*First*, the California Court of Appeal considered the plain language of Wage Order 7 and determined that "the text of Wage Order 7, alone, is not determinative of the question." 243 Cal. Rptr. 3d at 468. In Wage Order 7, "report for work" is not modified by terms such as "physically" or "at the workplace." Cal. Code Regs. tit. 8,

§ 11070(5)(A).  *Ward* recognized that dictionary definitions of "report" point in both directions.  243 Cal. Rptr. 3d at 468–69.  Some definitions "have a spatial element," suggesting physical presence; whereas other definitions "focus on the reporter's *intent*, rather than his or her *location*."  *Id.* (emphasis in original); *see also Report*, Oxford Living Dictionaries: English, available at https://en.oxforddictionaries.com/definition/report     (last visited Sept. 27, 2019) (defining "report" as to "[p]resent oneself formally as having arrived at a particular place *or* as ready to do something") (emphasis added).

Zumiez argues that the definition of "work" is "the place where one is employed," so "report for work" means physically showing up at that place.  Zumiez acknowledges, however, that work has other common meanings, such as "activity in which one exerts strength or faculties to do or perform."  Because one can report *to* a place or *for* a task, *Ward* found that the plain language of the text remains susceptible to more than one meaning, making the language alone therefore not dispositive.  There is no persuasive basis for believing that the California Supreme Court would decide otherwise.  *See Am. Tel. & Tel. Co.*, 311 U.S. at 237.

*Second*, the California Court of Appeal turned to the regulatory history and purpose of the reporting time pay provision of Wage Order 7.  *Ward*, 243 Cal. Rptr. 3d at 469–75.  The court concluded that at the time that Wage Order 7 was enacted—in 1943—telephonic reporting had not been contemplated, but that "[t]he contemporaneous understanding of 'report for work' is not dispositive."[4]  *Id.*

---

[4] Zumiez argues that the California Court of Appeal erred in concluding that statutory interpretation principles allow for "evolutionary arguments," citing to *New Prime Inc. v. Oliveira*, 139

at 469. Instead, the California Supreme Court "constru[es] statutes that predate their possible applicability to new practices or technology," *id*. (quoting *Apple*, 292 P.3d at 887), by determining "*how the [enacting body] would have handled the problem if it had anticipated it*." *Id*. (quoting *People v. Butler*, 451 Cal. Rptr. 2d 150, 151 (Ct. App. 1996)). Accordingly, the California Court of Appeal looked to the history and purpose of Wage Order 7's reporting time pay requirement and found the history "reveals . . . that the IWC's purpose in adopting reporting time pay requirements was two-fold: to 'compensate employees' and 'encourage proper notice and scheduling.'" *Id*. at 472–72 (quoting *Murphy*, 155 P.3d at 295) (alteration omitted). Therefore, the California Court of Appeal determined, "had the IWC considered the issue, it would have concluded that telephonic call-in requirements trigger reporting time pay." *Id*. at 473.

In reaching this conclusion, *Ward* drew a straight line from determinations made by the IWC in 1942 and 1943 to the applicability of reporting time pay to call-in scheduling practices today. In 1942, reporting time pay requirements were contemplated as "a penalty" for employers who arranged "to have plenty of workers around for all emergencies" without pay; the premise of the requirements

---

S. Ct. 532, 539 (2019), and *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 950 (9th Cir. 2010). But federal principles of statutory interpretation cannot replace state principles of statutory interpretation. Those cases involved federal subject matter jurisdiction whereas here, we have diversity jurisdiction. We are guided by how the *California* Supreme Court would interpret a *California* wage order. *CPR for Skid Row*, 779 F.3d at 1104. "Under California law, the 'fundamental task' of statutory interpretation is 'to determine the [enacting body's] intent so as to effectuate the law's purpose.'" *Id*. (quoting *People v. Cornett*, 274 P.3d 456, 458 (Cal. 2012)).

was that "[a]llowing a large number of workers to come to the plant when there is little or no work for them is serious abuse." *Id*. at 471–72 (citing Kidd, Chairman, Comment on the Rep. of the Wage Bd. for the Canning and Preserving Industries (July 21, 1942)). In 1943, the year that a reporting time pay requirement was added to Wage Order 7, a reporting time pay requirement was also added to the wage order governing the housekeeping industry. *Id*. With respect to that wage order, the IWC considered—and rejected—"an employer request that employees who resided at the workplace be paid" fewer hours of reporting time pay because such employees did not lose time traveling to and from their workplace. *Id*. Accordingly, the California Court of Appeal reasoned in *Ward*, the contemporary call-in practice "ha[s] much in common with the specific abuse the IWC sought to combat by enacting a reporting time pay requirement," because it "creates no incentive for employers to competently anticipate their labor needs and to schedule accordingly." *Id*. at 473. "Like requiring employees to come to a workplace at the start of a shift without a guarantee of work, unpaid on-call shifts . . . create a large pool of contingent workers whom the employer can call on if a store's foot traffic warrants it, or can tell not to come in if it does not, without any financial consequence to the employers." *Id*. At the same time, even where no transportation cost or significant lost time is incurred, in both the on-site and call-in shift situations, there are "tremendous costs on employees" because, among other things, "they cannot commit to other jobs or schedule classes during those shifts" and "must make contingent childcare or elder care arrangements, which they may have to pay for even if they are not [permitted] to work." *Id*.

Therefore, *Ward* concluded, "[A]n employee need not necessarily physically appear at the workplace to 'report for

work.'  Instead, 'report[ing] for work' within the meaning of the wage order is best understood as presenting oneself *as ordered.* 'Report for work,' in other words . . . is defined by the party who directs the manner in which the employee is to present himself or herself for work—that is, by the employer." *Id*. at 475.

Zumiez's two principle arguments to the contrary were addressed by the California Court of Appeal and determined to be unavailing.  Zumiez first argues that the purpose of reporting time pay is to compensate employees for the transportation costs of arriving at work, citing to IWC statements and meeting minutes from the 1940s, 1960s, and 1970s, as well as DLSE policy manuals and opinion letters.  While avoiding the cost of transportation was one motivating factor, it was never the only one; the IWC explicitly found that reporting time pay was necessary "in order to compensate the employee for transportation costs *and loss of time*."  Indus. Welfare Comm'n, *Minutes of a Meeting of the Industrial Welfare Commission of the State of California Held Apr. 5, 1943* (1943).  *Ward* squarely addressed the "suggestion that reporting time pay was intended only to compensate employees for travel time and expense," and rejected it, reasoning that the argument

> [could not] be squared with the exception in the reporting time pay provision for shifts cancelled for reasons beyond the employer's control.  This exception makes sense only if reporting time pay was intended to impose a penalty for overscheduling—*not* if reporting time pay was intended only to compensate employees for travel time and expense.  Put simply, employees' travel time and expenses

> are not reduced because the employer has a
> good reason for canceling a shift.

*Ward*, 243 Cal. Rptr. 3d at 475. Zumiez and Abercrombie & Fitch Stores, Inc., appearing as an amicus curiae, next highlight that phone technology existed in 1943 and yet the wage order does not mention phones. The California Court of Appeal rejected this argument also. *Id.* at 470 ("[A]n omission [of mention of telephonic reporting in Wage Order 7] is not surprising because neither the practice of on-call scheduling nor the cell phone technology that makes such scheduling possible existed when the IWC adopted the reporting time pay requirement in the 1940s.") (internal quotation marks and citation omitted). *Ward* rejected Zumiez's (and amicus's) historical argument and there is no "persuasive data," *Am. Tel. & Tel. Co.*, 311 U.S. at 237, to suggest the California Supreme Court would reach a different conclusion concerning the regulatory history and purpose of Wage Order 7.

*Third*, the California Court of Appeal in *Ward* recognized that its conclusion about reporting time pay for call-in shifts is consistent with *Augustus*, 385 P.3d 823, a recent California Supreme Court decision. *Ward*, 243 Cal. Rptr. 3d at 475–77. There, the California Supreme Court held that a policy in which employees were required to carry a device, such as a pager or cell phone, during their breaks so that they could be reached by their employer was "irreconcilable with employees' retention of freedom to use rest periods for their own purposes," and did not satisfy the wage order's rest period requirement. *Augustus*, 385 P.3d at 832. Although *Augustus* addressed rest periods, not reporting time pay, the California Court of Appeal's reliance on *Augustus* is pertinent to our prediction concerning whether the California Supreme Court is likely to disagree

with *Ward*. *See Ward*, 243 Cal. Rptr. 3d at 477. As alleged by Herrera, Zumiez's Call-In shift practice imposes similar significant restrictions on employees' off-duty time to those in *Augustus*, by limiting "how employees can use their time . . . [30 minutes] before an on-call shift, when they must be available to contact [Zumiez]." *Id.*

*Fourth*, the California Court of Appeal considered the retail employer's public policy arguments and found them unpersuasive. *Ward*, 243 Cal. Rptr. 3d at 477–79. One of the policy arguments considered by the California Court of Appeal is also argued here: that unsuccessful bills the California Legislature considered during the 2015-16 session would have provided the relief that Herrera seeks. *See* S.B. 878, 2015-16 Reg. Sess. (Cal. 2016); Assemb. B. 357, 2015-16 Reg. Sess. (Cal. 2015). That the Legislature considered bills to address the issue of pay for Call-In shifts, Zumiez argues, shows that the existing wage order does not include pay for such shifts through the reporting time pay provision. The majority in *Ward* was unpersuaded by the policy argument based on unsuccessful bills for two reasons: first, "[t]he proposed legislation went further than the reporting time pay provision of Wage Order 7," and therefore would *not* have been unnecessarily duplicative of this construction of the reporting time pay provision; and, second, before the decision in *Ward*, federal district courts "ha[d] split over the applicability of Wage Order 7 to on-call shifts," and the legislature may have wanted to resolve the uncertainty.**[5]** 243 Cal. Rptr. 3d at 479.

*Ward* also acknowledged a third, related reason to reject the argument resting on unsuccessful bills, which we also find compelling: unenacted bills are of "little value" to

---

**[5]** *See supra* n.3.

courts.  *Sacramento Newspaper Guild v. Sacramento Cty. Bd. of Supervisors*, 69 Cal. Rptr. 480, 492 (Ct. App. 1968) ("The light shed by such unadopted proposals is too dim to pierce statutory obscurities."); *see also Rucho v. Common Cause*, 139 S. Ct. 2484, 2524 (2019) (Kagan, J., dissenting) ("[W]hat all these *bills* have in common is that they are not *laws*."); *Cal. Chamber of Commerce v. State Air Res. Bd.*, 216 Cal. Rptr. 3d 694, 713 (Ct. App. 2017) (recognizing there are "limited circumstances under which an unenacted bill is relevant").  Arguments based on unenacted bills are unpersuasive because we do not know why a specific bill was not passed.  A legislature can decide not to enact a bill because it disagreed with that proposal.  But there are a host of other reasons why a legislature may not enact a bill, including that the legislature thought the bill superfluous given existing law.

Again, we are unpersuaded that the California Supreme Court would reach a different conclusion than did *Ward* with regard to Zumiez's argument concerning the recent unsuccessful bill.  *Am. Tel. & Tel. Co.*, 311 U.S. at 237.

In sum, following *Ward*, we conclude that, under subsection (5)(A) of Wage Order 7, a requirement that employees call their manager thirty minutes to one hour before a scheduled shift constitutes "report[ing] for work."  Here, Herrera has alleged that she was scheduled for a shift, expected to work, incurred costs or arranged her other obligations and planned activities to make herself available, and then was not permitted to work.  *See Ward*, 243 Cal.

Rptr. 3d at 473–74. The district court correctly determined that Herrera has stated a claim for reporting time pay.**[6]**

## B. Hours Worked

Herrera also asserts a claim for unpaid wages for the time that employees spent calling their managers for Call-In shifts. Employers "shall pay . . . not less than the applicable minimum wage for all hours worked" pursuant to section 4(B) of Wage Order 7. Cal. Code Regs. tit. 8, § 11070(4)(B). "'Hours worked' means the time during which an employee is subject to the control of an employer, and includes all the

---

**[6]** Zumiez also argues that Herrera's reporting time claim fails because her complaint did not base the claim on laws that afford a private right of action. We disagree. Required payments for reporting time are wages. *See, e.g.*, *Murphy*, 155 P.3d at 295 (citation omitted); *Shine v. Williams-Sonoma, Inc.*, 233 Cal. Rptr. 3d 676, 681–82 (Ct. App. 2018); *see also* DLSE Operations & Procedures Manual (2007) § 4.5.1.1.1. Employees have a private right of action to recover any unpaid wages, Cal. Labor Code § 1194, including reporting time pay, *see Ward*, 243 Cal. Rptr. 3d at 463–64, 479 (permitting a private right of action for reporting time pay to proceed). Herrera cited Cal. Labor Code § 1194 in her complaint. (And, in any event, an "imperfect statement of the legal theory supporting the claim asserted" is not fatal to a pleading. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (reversing a grant of summary judgment for defendants that was premised on the plaintiffs' failure to invoke the specific statute at issue).) Accordingly, we conclude there is a private right of action to recover reporting time pay, and Herrera sufficiently stated it in her complaint.

Zumiez likewise contends—for the first time on appeal—that Herrera's claim for failure to maintain required records was not based on laws that afford a private right of action. This is a derivative claim the parties agree rises or falls with the other claims. *See infra* III.D. Moreover, Herrera's complaint roots this claim in Cal. Labor Code § 1174.5 and Wage Order 7. Plaintiffs have a private right of action to enforce a statute, such as section 1174.5, that requires compliance with a wage order.

time the employee is suffered or permitted to work, whether or not required to do so."**[7]** *Id.* § 11070(2)(G). Zumiez argues that the calls are not compensable as "hours worked" under Wage Order 7 because Herrera has not alleged sufficient facts to establish that employees were subject to Zumiez's control during the calls.**[8]**

Whether an employee is subject to her employer's control is a fact-intensive inquiry. "The level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative." *Morillion*, 995 P.2d at 146; *see also Frlekin v. Apple Inc.*, S243805, 2020 WL 727813, at *10 (Cal. Feb. 13, 2020) (reaffirming *Morillion*'s holding and "emphasiz[ing] that whether an activity is required remains probative in determining whether an employee is subject to the employer's control"). "[A]n employee who is subject to an employer's control does not have to be working during

---

**[7]** All of California's wage orders contain the same definition of "hours worked," with the exception of two wage orders that use additional language, so we consider interpretations of "hours worked" from the wage orders with identical definitions. *See Morillion*, 995 P.2d at 142.

**[8]** Initially, Zumiez also argued that the time spent making the calls was de minimis. During the pendency of this appeal, the California Supreme Court held that California's wage and hour statutes and regulations have not adopted the de minimis doctrine. *Troester*, 421 P.3d at 1116 (holding that several "off the clock" minutes per shift are compensable). Therefore, Zumiez no longer argues that the de minimis rule forecloses Herrera's claim but purports that it may make further de minimis arguments after fact development in the district court because *Troester* left open the possibility that there could be "circumstances where compensable time is so minute or irregular that it is unreasonable to expect the time to be recorded." *Id.* We express no views on any such argument.

that time to be compensated[.]" *Morillion*, 995 P.2d at 143 (recognizing that the "suffered or permitted to work" clause does not limit the "control" clause in the definition of "hours worked"). For example, in *Morillion v. Royal Packing Co.*, where an employer required agricultural workers to meet at a designated location and travel to and from the fields in company buses, the California Supreme Court concluded the workers were subject to their employer's control during time spent waiting for and riding the buses. *Id*. at 147. Time the workers spent transporting themselves to the employer-determined departure points, however, was not compensable. *Id*. at 141 n.2. That the workers would have to commute to work even if their use of the company buses were not mandated did not sway the California Supreme Court. *Id*. at 146. Similarly, the court was unpersuaded by the workers' ability to "engage in limited activities such as reading or sleeping on the bus" because the workers could not "use the time effectively for their own purposes," such as to "drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car." *Id*. (internal quotation marks and citation omitted).

Zumiez implies the DLSE has stated that calls to an employer are not compensable. The opinion letter Zumiez cites, however, addresses the factors to consider in determining whether "on-call" time for employees working on "standby" status, such as hospital workers, is sufficiently restrictive to constitute "hours worked." Cal. Div. of Labor Standards Enf't, Opinion Letter on "On-Call" Time-Beepers 1 (Mar. 31, 1993), https://www.dir.ca.gov/dlse/opinions/ 1993-03-31.pdf. That is not the situation here.[9] *See* Cal.

---

[9] Even if standby pay were at issue, the DLSE left open the question of whether standby time, during which an employee may have to call her employer, is compensable. *Id*. at 4–5. The DLSE maintained, "[t]he

Code Regs. tit. 8, § 11070(5)(D); *see also Ward*, 243 Cal. Rptr. 3d at 468 (treating a required call to an employer as "reporting for work" under Wage Order 7 and *not* as standby work that is not subject to the reporting pay requirements of Wage Order 7).

Construing the facts alleged in the complaint as true and in the light most favorable to the non-moving party, *see Fleming*, 581 F.3d at 925, Herrera has alleged a claim for unpaid wages. Herrera alleged facts about Zumiez's control over the calls, as well as the timing, frequency, and duration of the calls: she alleged that she and other employees were required to call their managers thirty minutes to one hour before their Call-In shifts, alleged that these calls were required three to four times per week and lasted five to fifteen minutes, and, critically, alleged that employees could be disciplined for failing to comply with the Call-In shift policy. Although Zumiez attempts to reframe the calls as merely checking one's schedule, Herrera alleged that the calls were scheduled and an employee making a call before a Call-In shift was doing so because she was scheduled and required to do so. *See Ward*, 243 Cal. Rptr. 3d at 478 (rejecting the same argument because, "as pled in plaintiff's complaint, [the employer] did not merely require employees to check their schedules as a necessary predicate to getting to work on time—it required employees to call in exactly two hours before the start of on-call shifts," as part of their

bottom-line consideration is the amount of 'control' exercised by the employer over the activities of the worker." *Id*. at 4. Further, the DLSE emphasized that a factor in determining whether an unpaid "on-call" or standby requirement for employees is possible is whether there is "a reasonable and longstanding industry practice" of uncompensated on-call time. *Id*. at 5. There is no evidence of such a practice in the retail industry in the record before us.

employment).  The allegations pled are sufficient to defeat Zumiez's motion for judgment on the pleadings.

## C. Indemnification

Herrera and putative class members seek indemnification for phone expenses incurred in calling Zumiez before Call-In shifts.  Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer[.]" Cal. Lab. Code § 2802(a).  Zumiez contends Herrera failed to plead sufficient factual allegations to support the claim.

Ascertaining whether an expense is "necessary" "depends on the reasonableness of the employee's choices." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 169 P.3d 889, 897 (Cal. 2007).  For example, where an employer is required to indemnify employees' automobile expenses, the employer does not have to indemnify unnecessary extra automobile expenses that are incurred based on the choice of car and fuel.  *Id.* at 898; *see also Townley v. BJ's Rests., Inc.*, 249 Cal. Rptr. 3d 274, 279 (Ct. App. 2019).

"[W]hen employees must use their personal cell phones for work related calls, [California] Labor Code section 2802 requires the employer to reimburse them."  *Cochran v. Schwan's Home Serv., Inc.*, 176 Cal. Rptr. 3d 407, 409 (Ct. App. 2014) (footnote omitted); *see also Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014).  If the use of the personal cell phone is mandatory, then reimbursement is always required, regardless of whether the employee would have incurred cell phone expenses absent the job.  *Cochran*, 176 Cal. Rptr. 3d at 412 ("Otherwise, the employer would receive a windfall

because it would be passing its operating expenses on to the employee."); *contra Pyara v. Sysco Corp.*, No. 2:15-cv-01208-JAM-KJN, 2017 WL 928715, at *1–2 (E.D. Cal. Mar. 9, 2017) (denying class certification where employees were provided company-issued phones for business but also communicated with supervisors with their personal cell phones); *Dugan v. Ashley Furniture Indus., Inc.*, SA CV 16-1125 PA (FFMx), 2016 WL 9173459, at *1, 4 n.2 (C.D. Cal. Nov. 29, 2016) (dismissing claim for indemnification of personal cell phone expenses made from a workplace where there was no policy requiring employees to use their personal cell phones and the employees could have made the calls from their employer's store phones).  To comply with section 2802, "the employer must pay some reasonable percentage of the employee's cell phone bill." *Cochran*, 176 Cal. Rptr. 3d at 412.

Thus, whether Herrera alleged sufficient facts to state a claim for reimbursement of phone expenses turns on whether it was necessary that the employees make calls and do so with phones that were not provided by the company.[10] Herrera alleged that phone calls pursuant to the Call-In policy were required and occurred when employees were not at the workplace.  Although that suggests that she may have been required to use a personal cell phone and incur related costs, Herrera failed to include specific, non-conclusory

---

[10] Zumiez protests that Herrera did not allege it was necessary to use a cell phone to comply with the call-in policy, suggesting that employees could use free communications services like WhatsApp or Skype.  But using WhatsApp or Skype often requires personal expenses associated with internet service and a phone or computer, for which a ruling consistent with *Cochran* might require reimbursement of a portion of the bills.  176 Cal. Rptr. 3d at 412–13 (holding that reimbursement of mandatory work-related cell phone calls is required even where the employee has an unlimited phone plan).

facts about how she made the calls or what costs she incurred. Accordingly, we reverse the district court's denial of judgment on the pleadings as to the indemnification claim. On remand, the district court may grant Herrera leave to amend the complaint to include more specific allegations.

## D. Remaining Claims

Both parties and the district court agree that the remaining claims—failure to keep required records; failure to provide accurate wage statements; failure to pay all earned wages upon separation from employment; unfair business practices under California's Unfair Competition Law; and civil penalties pursuant to PAGA—are derivative of, and rise or fall with, Herrera's reporting time pay, minimum wage, and indemnification claims. Accordingly, we affirm the denial of the motion for judgment on the pleadings on the remaining claims, to the extent the district court determines they relate to the reporting time pay and minimum wage claims.

## IV.

The order denying the motion for judgment on the pleadings is affirmed with respect to Herrera's claim for reporting time pay, failure to pay minimum wage, and the related remaining claims. The order is reversed with respect to Herrera's claim for indemnification. The case is remanded for further proceedings consistent with this opinion.

The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

BERZON, Circuit Judge, concurring:

I concur in the majority's opinion in full. I write separately to respond briefly to Judge Nelson's concurrence.

Judge Nelson asks future Ninth Circuit panels to consider certifying the question answered by *Ward v. Tilly's, Inc.*, 243 Cal. Rptr. 3d 461 (Ct. App. 2019), *review denied* (May 15, 2019), and this opinion to the California Supreme Court. He also questions the panel's decision to publish a precedential opinion in this case.[1] To the degree Judge Nelson's suggestions rest on the notion that such certifications should be routine or that publication of precedential opinions in diversity cases is inappropriate, his suggestions bear comment.

We have diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Diversity jurisdiction is, of course, provided for by the Constitution and has been decreed by Congress. *See* U.S. Const. art. III, § 2, cl. 1; Judiciary Act of 1789, Ch. 20 §§ 9-13, 1 Stat. 73, 73-78. Critics of diversity jurisdiction have long expressed their skepticism of the propriety and scope of this grant of jurisdiction. *See, e.g.*, Felix Frankfurter, *Distribution of Judicial Power Between United States and State Courts*, 13 Cornell L.Q. 499, 520–30 (1928). Although many judges wish diversity jurisdiction would go away, it has not.

Litigants therefore are entitled to file diversity cases with us or to remove on diversity grounds cases filed in state courts. Such cases are not second-class proceedings in the federal courts, nor do we implicate federalism concerns by

---

[1] Under this court's internal procedures, any judge on a panel can require publication. 9th Cir. Gen. Order 4.3.

treating them coequally with other cases (as long as we apply state law as required by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

In diversity cases, as in others, "[w]e invoke the certification [to state court] process only after careful consideration and do not do so lightly." *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019) (en banc) (citation and internal quotation marks omitted). Certification statutes are quite useful, as they allow federal courts to seek guidance from state courts on difficult and novel state law issues. But their overuse can overburden state courts unnecessarily, creating federalism friction of their own. Such overuse also can foster two-bites-at-the-apple litigation tactics, where a party files a diversity case in federal court or removes the case to federal court, and then, if dissatisfied with the federal court's interpretation of state law, presses for certification of the question to the state Supreme Court.[2] Where, as here, we are following the only state appellate opinion on point and have no reason to think the state Supreme Court, which denied review of that appellate opinion, will disagree, certifying the issue is unwise.

Nor is there a compelling basis for preferring a nonprecedential opinion in this circumstance. This court does often decide state law cases in nonprecedential memorandum dispositions, as our rulings on state law issues are not ultimately dispositive—the state courts may later disagree. But here, where the issue is one likely to recur in federal courts *and* we have clear guidance from the state courts, refusing to publish is supremely inefficient. The legal

---

[2] That concern is not present here, as the plaintiffs filed the case in federal court.

issue likely would have to be relitigated in federal district courts and in this court were we not to issue a precedential opinion, as the call-in and show-up procedures at issue here have become increasingly common.**[3]**

In short, no issue of federalism is at stake here that is not inherent in the existence of diversity jurisdiction.

R. NELSON, Circuit Judge, concurring:

I concur in the panel's decision affirming in part, reversing in part, and remanding this case to the district court because our precedent requires it. The California Court of Appeal's opinion in *Ward v. Tilly's, Inc.*, 243 Cal. Rptr. 3d 461 (Ct. App. 2019), *review denied* (May 15, 2019), is a "controlling interpretation," *Tomlin v. Boeing Co.*, 650 F.2d 1065, 1069 n.7 (9th Cir. 1981), of California law which we must follow absent "convincing evidence" that the California Supreme Court would decide the issue differently than the *Ward* majority did. *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

But the *Ward* opinion's interpretation of "report for work" is just one possible interpretation of that language in Wage Order No. 7-2001. That interpretation was only agreed to by two panel members of the California Court of Appeal. *Ward*, 243 Cal. Rptr. 3d at 462–63. The third panel member, Justice Egerton, dissented and offered a plausible

---

**[3]** Federal district courts have already faced the "report for work" question several times. *See Segal v. Aquent LLC*, 18-cv-346, 2018 WL 4599754, at \*5 (S.D. Cal. Sept. 24, 2018); *Casas v. Victoria's Secret Stores, LLC*, CV-14-6412, 2014 WL 12644922, at \*6 (C.D. Cal. Dec. 1, 2014).

alternative interpretation.  *See id.* at 479–80 (Egerton, J., concurring and dissenting).  And at least one other court reached the same conclusion that Justice Egerton did.  *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKx), 2014 WL 12644922 (C.D. Cal. Dec. 1, 2014).

Given the differing approaches to the underlying legal question, and absent certification to the California Supreme Court, the more prudent course would be not to publish an opinion in this case.[1]  True, our decisions on questions of state law are not binding on California state courts.  *See In re McLinn*, 739 F.2d 1395, 1401–02 (9th Cir. 1984) (en banc).  But by deciding this issue in a published opinion, the *Ward* majority's pronouncement of California state law now binds any federal district court in the Ninth Circuit that might disagree with *Ward*—as one previously did, *Casas*, 2014 WL 12644922, at *3—because district courts do "not have the authority to ignore circuit court precedent . . . ." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) (internal citations and quotation marks omitted).  The opinion also binds future Ninth Circuit panels on the merits "in the absence of any subsequent indication from the [California] courts that our interpretation was incorrect." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (internal quotation marks omitted).

The problem, I fear, is that our decision to publish will preclude California courts from telling us if we got it wrong. This published opinion may incentivize future plaintiffs to bring their state law cases in federal court, where the outcome is likely to be more favorable and more certain. This incentive, in turn, could prevent cases from percolating

---

[1] The decision to publish requires just one judge to vote that publication is "necessary."  9th Cir. Gen. Order 4.3 (2014).

in the California state courts, foreclosing the state courts from weighing in on the issue. If California state courts are deprived the opportunity to provide "subsequent indication [to us] . . . that our interpretation [of California law] was incorrect," *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002), cooperative judicial federalism is undermined.[2]

Should my fears materialize, future panels may consider certifying the question to the California Supreme Court. *See Troester v. Starbucks Corp.*, 680 F. App'x 511, 512–13 (9th Cir. 2016), *certified question answered*, 421 P.3d 1114 (Cal. 2018) (certifying state law question to California Supreme Court that prior Ninth Circuit panel decided in published opinion); *see also Wilson v. Workman*, 577 F.3d 1284, 1323 (10th Cir. 2009) (en banc) (Gorsuch, J., dissenting) ("Future panels of this court likewise remain free to certify the question . . . ."). We have already certified a state law question en banc, even without the "sharp split of authority," *Emery v. Clark*, 604 F.3d 1102, 1112 (9th Cir. 2010), typical of certification cases. *See Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1073 (9th Cir. 2019) (en banc), *certified question accepted*, No. OP 19-0304, 2019 WL 2383604 (Mont. June 4, 2019) ("Because of the importance of the state law question, and the potential of different outcomes in

---

[2] Indeed, we often "decide state law cases in nonprecedential memorandum dispositions," J. Berzon Concurrence at 32, without treating diversity cases as "second-class proceedings," *id.* at 31. That is what we should have done here because a single divided intermediate appellate state court decision in *Ward* hardly constitutes "clear guidance from the state courts" warranting publication. *Id.* at 32. Publication may be warranted in many diversity cases, but not where it may well prevent other state courts from providing the "clear guidance" we seek. Whatever efficiency *federal* courts may gain from publication here, *see id.*, is thus outweighed by risks of undermining cooperative judicial federalism with *state* courts.

federal and state courts, we have elected to certify the issue
to the Montana Supreme Court").

   Ultimately, this important state law question may need
to be certified, not as a matter of course, but to seek clear
guidance and to help "build a cooperative judicial
federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391
(1974).  This federalism demands "a proper respect for state
functions, a recognition of the fact that the entire country is
made up of a Union of separate state governments, and a
continuance of the belief that the National Government will
fare best if the States and their institutions are left free to
perform their separate functions in their separate ways."
*Younger v. Harris*, 401 U.S. 37, 44 (1971).  Such respect
preserves states' autonomy and protects their power to
interpret their own laws differently than we might otherwise
decide to, provided that they do so within the bounds set by
federal law.  Our decision to follow the majority's decision
in *Ward* accords with this sound constitutional principle.
Yet by publishing without first seeking the views of the
California Supreme Court, we risk undermining cooperative
judicial    federalism,    with    potentially    wide-ranging
consequences.